UNITED STATES DISTRICT COURT                    c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DAVID BRENT PELTIER,            CIVIL ACTION NO. 1:18-CV-01126
Plaintiff

VERSUS                         JUDGE DRELL

ANDREW SAUL,                   MAGISTRATE JUDGE PEREZ-MONTES
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,
Defendant

---

REPORT AND RECOMMENDATION

Before the Court is David Brent Peltier's ("Peltier's") appeal of the denial of Social Security disability insurance benefits ("DIB") by the Commissioner of Social Security (the "Commissioner"). Because substantial evidence supports the ALJ's findings, the Commissioner's decision should be AFFIRMED, and Peltier's appeal should be DENIED and DISMISSED WITH PREJUDICE.

I.   Background

Peltier protectively filed an application for period of disability and DIB under Title II of the Social Security Act (the "Act") on June 10, 2016. ECF No. 16-1 at 142. Peltier alleged a disability onset date of October 24, 2011, due to lower right ankle and shin injuries, upper right tibia injuries, seizures, anxiety, and high blood pressure. *Id.* at 63-64. Peltier's claims were initially denied by the Social Security Administration ("SSA") on September 16, 2016. *Id.* at 74.

Peltier's application was heard before an administrative law judge ("ALJ") on August 21, 2017. *Id.* at 46. Peltier appeared with Leonard Francoise, a vocational

expert ("VE"). *Id.* Peltier also appeared with non-attorney representative Chase Burns ("Mr. Burns"). *Id.* The ALJ denied Peltier's claims on December 8, 2017. *Id.* at 25-38. The ALJ determined that Peltier was not disabled under the Act, finding at step five of the sequential evaluation process that Peltier is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

On April 13, 2018, the Appeals Council denied Peltier's request for review, and the ALJ's December 8, 2017 decision became the final decision of the Commissioner. *Id.* at 9.

Proceeding *in forma pauperis*, Peltier filed this appeal for judicial review. ECF No. 1. Peltier asserts the that the Commissioner's decision was based on legal error and is not supported by substantial evidence. ECF No. 1 at 4. Specifically, Peltier asserts the ALJ erred at steps two and three by failing to consider all of the evidence, and by failing to consider the side effects of his narcotic medications. ECF Nos. 21 at 7, 26 at 6.

The Commissioner responded. ECF No. 27. Peltier's appeal is now before the Court for disposition.

A.   <u>**Administrative Hearing**</u>

At the August 21, 2017 administrative hearing, Peltier testified that he is 49 years old. ECF No. 16-1 at 49. He has a driver's license. *Id.* Peltier can drive with his seizure problems and has not had any issues while driving. *Id.* at 49-50. He mainly has problems when he goes into stores. *Id.* at 50.

Peltier testified he does not take a seizure medication. *Id.* He tried Gabapentin and Dilentin but they were not doing any good. *Id.* He takes pain medication and high blood pressure medication. *Id.*

Peltier testified that his last seizure was on Christmas Eve while shopping in Walmart. *Id.* at 51. He noticed a strange feeling come over him and felt the side of his face and jaw clench up. *Id.* The next thing he knew he was in an ambulance and did not know what happened. *Id.* When he goes into any store with fluorescent lights, he can feel it coming on. *Id.* When he gets out of the store in the sunlight, the feeling subsides. *Id.*

He stated that two neurologists he spoke to just shrugged their shoulders and said they "don't know." *Id.* Peltier testified that from what he gathered online, there is such a thing as a photosensitive and pattern-sensitive epilepsy. *Id.* He testified that both neurologists told him "they're so expensive" that he would probably have to take out a loan to get anything done. *Id.* Peltier stated they told him there is not an anticonvulsant they could give to stop the triggers. *Id.* He was told the best thing he could do is stay out of those types of situations. *Id.* at 52. He does not go into Walmart or any stores. *Id.*

Peltier fractured his right ankle. *Id.* at 52. He has swelling when he stands for extended periods. *Id.* He can stand for 20 to 30 minutes at a time. *Id.* Peltier testified he can walk a fairly good distance but not a mile. *Id.* Peltier further testified that he had surgery on his ankle and that he anticipated a future surgery. *Id.* He stated that the surgeon told him they would eventually have to "go in and clean that

ankle out of arthritis." *Id.*  He testified that his ankle would eventually get to the point where he could not walk on it. *Id.*

Peltier was also having some right hip pain.  *Id.*  When he fell in Walmart, it broke the femoral head.  *Id.*  Peltier had surgery to his right hip, and they put in three long screws.  *Id.* at 53.  He stated that an X-ray shows one of the screws has backed out some.  *Id.*  Peltier testified that sitting for long periods is painful.  *Id.*

Peltier also has issues with anxiety and panic attacks.  *Id.*  He testified it also happens when he is in a store.  *Id.*  A dizzy feeling, anxiety, takes over him and his heart rate goes through the roof.  *Id.*  He does not take anxiety medication.  *Id.*  He does not have a counselor or psychiatrist.  *Id.*

Peltier can dress and bathe himself.  *Id.*  He can do his own laundry.  *Id.* at 54. He testified he cannot do a large load of dishes.  *Id.*  He cannot cook a three or four-course meal because it takes too long standing at the stove.  *Id.*  And he cannot do any yard work.  *Id.*

Peltier completed high school.  *Id.*  He had some vocational training as a "heating and cooling guy."  *Id.*  He last worked in October of 2011.  *Id.*

Peltier testified he was involved in a vehicle crash in October of 2011.  *Id.*  He testified this was when he hurt his ankle.  *Id.*  He stated that both of his shin bones were broken into about 12 pieces.  *Id.* at 55.

Peltier testified he worked at Proctor and Gamble, working for "Fru-Con."  *Id.* He was a foreman who supervised one other worker.  *Id.*  Peltier testified that all his work was "HVAC."  *Id.*

Peltier's non-attorney representative also questioned him.  *Id.* at 56.  Peltier testified that his right hip surgery was performed in late December 2012.  *Id.*  He had several X-rays taken, which have shown that the screw has continued to back out. *Id.*  Mr. Burns asked whether any doctor mentioned avascular necrosis of that hip. *Id.*  Peltier testified he was told that eventually "this femoral head will die, and that they will have to perform a hip replacement."  *Id.*

Peltier testified he has pain in his hip with sitting.  *Id.* at 57.  After about two hours, he has to get up and either lie down or stand up and walk around.  *Id.*  He can sit in a chair for about two hours at one time.  *Id.*  Peltier testified he would need to change positions for at least 30 to 45 minutes before he could sit for another two hours.  *Id.*  He cannot sit for six hours out of an eight-hour day in a chair because it hurts too much.  *Id.*  Peltier testified he could probably manage to sit about four hours. *Id.*

The VE testified that Peltier's past work consists of an air conditioning mechanic, skill SVP level 7, physical demand level medium, and DOT[1] number 637.261.014.  *Id.* at 58.

The ALJ asked the VE whether this individual would have any transferrable skills to sedentary work.  *Id.*  The VE testified that the individual would not.  *Id.* at 59.  The ALJ asked the VE to assume a hypothetical individual with the same age, education, and work experience as Peltier with the following limitations:   using sedentary work; lifting only 10 pounds occasionally; standing and walking for only

---

[1] Dictionary of Occupational Titles.

two hours out of an eight-hour workday; and sitting only six hours out of an eight-hour workday with normal breaks. *Id.* The ALJ asked the VE if, based on those limitations, whether that hypothetical individual could perform any of Peltier's past work. *Id.* The VE testified the hypothetical individual could not. *Id.*

The ALJ asked if there would be any other jobs in the national or regional economy that a person with those limitations could perform. *Id.* The VE testified there are other jobs in the national economy that such an individual could perform. *Id.* The VE stated that the individual could work as a document specialist, unskilled work level, SVP level 2, physical demand level sedentary, and DOT number 249.587-018 (46,000 jobs in the national economy). *Id.* The VE also testified that another job that would fit that hypothetical would be a call out operator, unskilled work level, SVP level 2, physical demand level sedentary, and DOT number 237.367-014 (18,000 jobs in the national economy). *Id.* The VE further testified that the hypothetical individual could work as a surveillance system monitor, unskilled work level, SVP level 2, physical demand level sedentary, and DOT number 379.367-010 (17,000 jobs in that national economy). *Id.* at 59-60.

The ALJ asked the VE to assume the hypothetical individual also could lift only five pounds, occasionally; could stand and walk only one hour out of an eight-hour workday and sit only four hours out of an eight-hour workday with frequent changes in sitting and standing every 15 to 30 minutes. *Id.* The ALJ asked whether that individual would be able to perform any of Peltier's past work. *Id.* at 60. The VE testified that the individual could not. *Id.* The VE testified there would be no

jobs in the national or regional economy for that hypothetical individual.  *Id.*  Peltier's non-attorney representation had no additional questions.  *Id.*

### B.   ALJ's Findings

To determine disability, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a).  The sequential process required the ALJ to determine whether Peltier: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant can perform work in the national economy. *See Greenspan*, 38 F.3d at 237.

Here, the ALJ found Peltier last met the insured status requirements of the Act on December 31, 2016.  ECF No. 16-1 at 30.  The ALJ found that Peltier had not engaged in substantial gainful activity during the period from his alleged onset date

of October 24, 2011 through his date last insured of December 31, 2016.  *Id.* at 31.  In step two and three of the sequential evaluation, the ALJ determined that, through the date last insured, Peltier suffered severe impairments of "status post lower limb fractures and hip degenerative joint disease."  *Id.*  But the ALJ concluded that, through the date last insured, Peltier did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in Appendix 1.  *Id.* at 32.

The ALJ determined Peltier retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).  *Id.* The ALJ concluded that Peltier's RFC precluded him from performing any past relevant work.  *Id.* at 37.

He further found that Peltier – age 49 on the date last insured – was a younger individual with at least a high school education and the ability to communicate in English.  *Id.*  Transferability of job skills was not material to the ALJ's determination of disability because he found that using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled."  *Id.*

The ALJ also determined that, considering Peltier's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Peltier could have performed.  *Id.*  The ALJ concluded that Peltier had not been under a disability, as defined in the Act, at any time from October 24, 2011, the alleged onset date, through December 31, 2016, the date last insured. *Id.* at 38.

## II.   Law and Analysis

### A.   Scope of Review.

In considering Social Security appeals, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether "substantial evidence" exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705

F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

 **B.** <u>The ALJ's determination of Peltier's RFC was proper.</u>

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports the decision or all the evidence that the ALJ rejected. *Falco*, 27 F.3d at 163-64.  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  A court "may only scrutinize the record" and consider whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564.  Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Peltier asserts that the ALJ's RFC determination is not supported by substantial evidence.   ECF No. 26 at 12-21.  Specifically, Peltier asserts the ALJ failed to consider medical evidence and testimony that he can sit for only four hours a day, failed to consider Peltier's limitations due to seizures and altered awareness

related to fluorescent lights, and failed to properly address the limitations offered by treating physician Dr. Brad Chauvin ("Dr. Chauvin").  ECF No. 26 at 12-21.

Peltier acknowledges the evidentiary record fails to contain the surgical history regarding his right heel, ankle, and his lower legs.  ECF No. 26 at 12-13. Peltier also admits "the ALJ correctly noted that 'the medical evidence of record dates only as far back as January, 2013.'"  *Id.* at 13. Peltier contends that neither the non-attorney representative nor the ALJ discussed the missing records or any attempts to obtain them.  *Id.*

While the ALJ has a duty to fully and fairly develop the record, Peltier bears the burden of proof on the first four steps.  *See Greenspan*, 38 F.3d at 237; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  He also bears the burden of obtaining medical records.  *Gonzalez v. Barnhart*, 51 Fed.Appx. 484 (5th Cir. 2002) (citing *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981)).  If the claimant fails to provide sufficient medical evidence, the ALJ may make a decision based on the evidence that is available. *Anderson*, 887 F.2d at 634; *see also Ripley v. Chafer*, 67 F.3d 552, 557 (5th Cir. 1995). It was Peltier's burden to prove he was disabled.  Still, the record shows the SSA made "every reasonable effort" to help Peltier obtain medical records. ECF No. 16-1 at 210-224, 247.

Peltier argues that, on December 11, 2013, Dr. Chauvin noted Peltier "had multiple surgeries to his hind foot and ankle in order to get them to heal apparently . . . [and that he] had a subtalar fusion secondary calcaneus fracture." *Id.* at 14.

Peltier asserts that his assessment noted ankle pain, foot pain, malunion of fracture, and malunion of his right Pilon fracture.  *Id.*  Peltier argues he testified that, due to his impaired lower extremities and due to his failed right hip surgery in December 2012, he could only sit for four hours throughout an eight-hour day.  *Id.* at 14-15.

Peltier argues that the ALJ misunderstood his testimony and critically erred in concluding that Peltier could sustain "no more than four hours total of standing and walking in an eight-hour day because of the pain."  *Id.* at 15.  Peltier contends that sedentary work requires sitting generally about six hours of an eight-hour workday.  *Id.* at 16 (citing Social Security Ruling ("SSR") 96-9p).  Peltier contends the ALJ failed to properly address his severe sitting limitations of only four hours a day, less than the minimum requirements for a sedentary position.  *Id.*

In determining Peltier's RFC, the ALJ found Peltier had severe impairments of status post lower limb fractures and hip degenerative joint disease.  ECF No 16-1 at 31.  He further found that these medically determinable impairments significantly limit the ability to perform basic work activities as required by SSRs 85-28 and 96-3. *Id.*  After consideration of the entire record, the ALJ found that, through the date last insured, Peltier had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).  *Id.* at 32.  The ALJ determined Peltier could "lift 10 pounds occasionally, stand/walk for two hours total out of an eight-hour workday, and sit for six hours total out of an eight-hour workday, with normal breaks."  *Id.*

In reaching this conclusion, the ALJ noted that, as required by SSR 96-8, he assessed the RFC based on all the evidence with consideration of the limitations and

restrictions by the combined effects of all Peltier's medically determinable impairments. *Id.* He also considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 C.F.R. 404.1529 and SSR 16-3. *Id.* He also considered opinion evidence under 20 C.F.R. 404.1527. *Id.*

The ALJ considered that Peltier testified that, due to his ankle fracture, he experiences significant pain and swelling after 20-30 minutes of standing. *Id.* at 33, 52. He noted Peltier's testimony that while he can walk a good distance, he could not manage a mile. *Id.* The ALJ further noted that Peltier testified that he had a seizure episode in December of 2012 in which he states he had a right hip injury and screws surgically installed. *Id.* at 33, 51-53. The ALJ noted Peltier stated he experiences substantial pain from long periods of sitting stemming from loosened screws. *Id.* at 33, 53. He further considered Peltier's testimony that he could sit for two hours at a time but needed a break of at least 30-45 minutes of being on his feet before he could sit again. *Id.* at 33, 57. And the ALJ considered Peltier's testimony that he could sustain no more than four hours total of standing and walking in an eight-hour day because of the pain. *Id.*

The ALJ opined that Peltier's medically determinable impairments could reasonably be expected to produce the alleged symptoms. *Id.* at 33. However, the ALJ found that Peltier's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons he explains in his decision.

*Id.* The ALJ determined that the medical evidence of record only partially supported Peltier's statements about the intensity, persistence, and limiting effects of his symptoms. *Id.*

Specifically, the ALJ noted that Peltier's testimony – that he sustained injuries to his right ankle and both shins in an October 2011 motor vehicle accident – is supported by the September 2016 consultative examination in which he reported the same. *Id.* at 33, 226. The ALJ observed that the medical evidence of record dates only as far back as January 2013. *Id.* at 33.

The ALJ noted that the medical record also supports Peltier's testimony that he sustained a right hip fracture in December of 2012, noting he underwent an open reduction and internal fixation of a femoral head fracture in that hip on December 26, 2012. *Id.* at 33, 249. A February 2012 examination revealed Peltier found sitting and standing painful. *Id.* at 33, 251. Dr. Chauvin believed Peltier would benefit from physical therapy, but noted Peltier was unable to get therapy. *Id.* at 33, 251. The ALJ observed that X-rays showed some collapse of the femoral head, which caused the screws to be somewhat prominent. *Id.* at 33-34, 252.

But the ALJ found that a May 2013 examination appeared to show that the hip fracture was healing without significant problems. *Id.* at 34, 253. And Dr. Chauvin noted at that visit that Peltier was "doing fairly well" and walking without an assistive device. *Id.* Peltier reported occasional pain on the outside of the hip, especially after prolonged sitting. *Id.* The ALJ noted that Dr. Chauvin's examination of Peltier showed range of motion that was essentially full. *Id.* Notably, Dr. Chauvin

14

kept Peltier weightbearing as tolerated and told him to continue to keep doing the things he wants to do.  *Id.* at 254.

The ALJ also noted that, in December of 2013, Peltier's records show he was experiencing pain in the lateral aspect of the hip when sitting but examination showed good hip range of motion with no crepitus or groin pain. *Id.* at 34, 255. Peltier's X-rays identified some collapse of the femoral head with some prominence of the screws but no evidence of hardware loosening or migration. *Id.* at 34, 255-256.  At that visit, Dr. Chauvin commented that the femoral head was going into avascular necrosis and thought Peltier might need hip replacement surgery in the future.  *Id.*

The ALJ found that Dr. Chauvin's June 2014 examination showed relatively normal findings similar to December 2013.  *Id.* at 34, 257-258.  The ALJ noted that X-ray studies did not appear to show progression of osteoarthritis or avascular necrosis.  *Id.* at 34, 257.  The record also shows Peltier reported he only occasionally had pain over the lateral aspect of his hip and was weightbearing as tolerated without the need of an assistive device.  *Id.* at 257.

The ALJ further observed that Peltier's most recent treatment by Dr. Chauvin in December 2016 showed worsening arthritis and developing avascular necrosis but no significant collapse.  *Id.* at 34, 244-245. Physical examination revealed mild tenderness over the greater trochanteric bursa and mild groin pain with hip range of motion.  *Id.* at 34, 245.  Dr. Chauvin noted Peltier's gait was antalgic but stable, and he could ambulate short distances.  *Id.*

The ALJ observed that Dr. Chauvin's records also show Peltier had a history of surgeries to repair a right ankle fracture. *Id.* at 34.  The ALJ noted that records from May of 2013 show Peltier continued to report ankle and foot pain and that he was able to walk but not long distances due to pain. *Id.* at 34, 253.  The ALJ further observed that the records show X-rays produced evidence consistent with "right pilon fracture with kind of a malunion there and a subtalar joint fusion," but "fairly good" range of motion with some sensation loss. *Id.* at 34, 253-54. The ALJ noted that Peltier complained of ankle swelling in December of 2013 to Dr. Chauvin, and that walking or standing aggravated the ankle symptoms. *Id.* at 34, 255.  The ALJ stated that Dr. Chauvin's December 2016 notes show the ankle malunion was "doing okay" and that X-ray study showed healed fractures and no evidence of progressive arthritis since the last X-ray study. *Id.* at 34, 244-245.  Dr. Chauvin observed Peltier had been weightbearing as tolerated and could ambulate for short distances. *Id.* at 244.  He stated Peltier was not interested in any type of procedure and he was recommended to continue weightbearing as tolerated and follow-up when necessary. *Id.* at 245.

The ALJ further observed Peltier reported improvement in pain symptoms and the ability to perform daily living activities with prescription opioids. *Id.* at 34, 260.  Dr. Sean C. Stehr ("Dr. Stehr") noted on December 2014 examination that Peltier is independent with transitions. *Id.* at 260.  Dr. Stehr observed Peltier had significant discomfort with active straight leg raises but had no significant trochanteric tenderness. *Id.*  Crepitus was present with passive and active range of motion of the left hip but he was grossly neurologically intact in the bilateral upper

extremities. *Id.*  Dr. Stehr's examinations dating from January to December of 2014 revealed essentially the same findings.  *Id.* at 260-76.

The ALJ gave great weight to the opinion of consultative examiner Dr. Connie Olson ("Dr. Olson").  *Id.* at 35.  The ALJ found that Dr. Olson's September 2016 examination was consistent with the other evidence of record.  *Id.*  Dr. Olson observed antalgic gait and range-of-motion limitations in the right hip and ankle.  *Id.* at 35, 230, 232-33.  The ALJ noted that other examinations of record produced similar findings, though they indicated relatively full range of motion in the affected areas. *Id.* at 35.  The ALJ found that the examinations, included Dr. Olson's, suggest that Peltier could still ambulate without an assistive device but for short distances only. *Id.* at 35, 230.  The ALJ determined that the objective medical findings demonstrated hip and ankle limitations consistent with sedentary work but did not support a conclusion that the claimant is unable to ambulate effectively in an eight-hour workday.  *Id.* at 35.

The ALJ also observed Peltier testified that he could drive a car without significant problems.  *Id.* at 35, 50.  Peltier testified he had no problems with bathing and dressing, and he could do laundry with sitting between loads, and some dishwashing.  *Id.* at 35, 53.  The ALJ also noted Peltier reported to Dr. Olson daily activities that included laundry, feeding pets, and watching television.  *Id.* at 35, 228. The ALJ opined that the evidence shows Peltier could perform daily activities independently but was limited by an inability to do prolonged standing or walking.

17

*Id.* at 35.  The ALJ observed Peltier's treatment history was conservative in the last four years of the period at issue.  *Id.*

The ALJ concluded the evidence of record supported a full range of sedentary work in the period at issue.  *Id.* at 36.  He found that the objective medical evidence suggested Peltier was able to ambulate short distances without an assistance device and that his lower extremities were mostly neurologically intact.  *Id.*  The ALJ noted that Peltier found medication management to be helpful in improving his ability to perform daily living activities.  *Id.*  The ALJ also noted that at the last treatment note, Dr. Chauvin noted Peltier was "doing okay," with diagnostic evidence showing healed fractures and no progressive arthritis.  *Id.*

A review of the record shows that the ALJ's RFC determination that Peltier can perform the full range of sedentary work is supported by substantial evidence. Specifically, the RFC determination is supported by the objective medical evidence of record.

Peltier further argues the ALJ failed to properly address his limitations regarding seizures and his altered awareness related to fluorescent lights.  ECF No. 26 at 16.  He admits the ALJ addressed his seizure in 2012.  *Id.*  Peltier asserts that the ALJ's non-severe ruling resulted in no work-related limitations in the RFC finding.  *Id.* at 17.  Peltier contends that the evidence establishes his "light sensitive altered sensations."  *Id.* at 18-19.  He admits that his seizures may not be defined as disabling seizures under §§ 11.02 and 11.03. *Id.* at 19.  However, Peltier argues that the ALJ applied the incorrect standard in failing to consider his impairment as

severe, and that remand is appropriate.  *Id.* at 19-20 (citing *Stone v. Heckler*, 752, F.2d 1099, 1101 (5th Cir. 1985)).

In assessing the severity of an impairment, the United States Court of Appeals for the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone*, 752 F.2d at 1101).

Here, the ALJ properly referenced the standard at step two for determining whether an impairment or combination of impairments is "not severe." ECF No. 16-1 at 30.  Specifically, the ALJ stated that:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522; Social Security Rulings (SSRs) 85-28 and 16-3).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

*Id.*

At step two, the ALJ determined Peltier had severe impairments of status post lower limb fractures and hip degenerative joint disease.  ECF No. 16-1 at 31.  Citing SSRs 85-28 and 96-3p, the ALJ determined that those medically determinable

impairments significantly limit the ability to perform basic work activities.  *Id.*  The ALJ further determined that Peltier had a medically determinable impairment of seizure disorder.  *Id.*  The ALJ noted that Peltier testified that his last seizure episode occurred in 2012.  *Id.* The ALJ cited to objective medical evidence of record showing a brain CT in January 2015 was normal.  *Id.*  The ALJ concluded that overall, this impairment had not resulted, and was not expected to result in, more than slight work-related limitations for a period of at least 12 consecutive months.  *Id.*  And the ALJ determined the seizure disorder was non-severe.  *Id.*

A review of the ALJ's decision shows that the ALJ cited SSR 85-28, which makes it clear that he applied the correct legal standard to evaluate the severity of Peltier's impairments at step two.  *See* SSR 85-28, 1985 WL 56856 (specifically stating that the agency's regulations and policies on determining the severity of impairments are consistent with the severity standards articulated in court decisions such as the standard cited in *Stone*).

However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether his step three finding and RFC are supported by substantial evidence. This is so because once at least one severe impairment is

determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. *See* 20 C.F.R. §§ 404.1545, 416.945.

Here, the ALJ proceeded through the remaining steps, and discussed and considered all the evidence and Peltier's testimony.   ECF No. 16-1 at 32-33.   In forming the RFC at step three, the ALJ noted Peltier's testimony that he suffered a seizure episode in December 2012.   *Id.* at 33. The ALJ also noted that the medical evidence of record dates only as far back as January 2013.   *Id.*

A review of the record shows that Peltier filled out a "Seizure Questionnaire" and stated his first seizure was December 2012. *Id.* at 195.   He noted his seizures "would occur daily if in fluorescent light."   *Id.*   He noted his last seizure was on July 23, 2016 and listed other onset dates of June 15th and 16th of 2016, and July 4th and 23rd of 2016.   *Id.*   He stated he was not currently on medication and that he had not seen any medical professionals for his seizures since filing his claim.   *Id.* at 196.   He then stated he saw two different neurologists for "light sensitive epilepsy."   *Id.* at 197. Peltier noted that Dilantin and Gabapentin were not effective treatments.   *Id.*   And he was told nothing on the market would prevent onset of this type of epilepsy.   *Id.*

The record evidence shows a January 23, 2015 normal CT of the brain with and without contrast.   ECF No. 16-1 at 224.   On March 3, 2016, a progress note from Dr. Shaikh Muhammad ("Dr. Muhammad") shows Peltier was doing well on follow-up with no seizure.   *Id.* at 213.   On November 17, 2016, Dr. Muhammad noted Peltier was doing well with no seizures and saw neurology with no medications prescribed.

*Id.* at 280.   Substantial evidence supports the ALJ's finding that Peltier's seizure disorder was not severe.

Peltier also asserts that the ALJ failed to fully address treating physician Dr. Chauvin's Medical Source Statement.   ECF No. 26 at 20.   Specifically, Peltier contends the ALJ failed to address Dr. Chauvin's limitations that "[Peltier] must elevate his right Pilon fractured leg to body level frequently throughout the day" and that "[Peltier] would miss about three work days [sic] a month."   ECF No. 26 at 20. Peltier acknowledges the ALJ addressed some of Dr. Chauvin's limitations.   *Id.*   He contends the ALJ cannot "pick and choose" only the evidence that supports his conclusion.   *Id.* (citing *Loza*, 219 F.3d at 394; *Francois v. Commissioner*, 158 F.Supp.2d 748, 766 (E.D. La. 2001)).

Dr. Chauvin issued an undated Medical Source Statement on behalf of Peltier. ECF No. 16-1 at 284.   Dr. Chauvin opined that Peltier must lie down for more than two hours during the workday for relief of pain in the right ankle and right hip degenerative changes.   *Id.*   He further opined that Peltier can only sit up for a maximum of one hour at a time in a working position, in a typical office chair at a desk or table and not support weight on his arms, and only a maximum total time of four hours during an eight-hour workday due to hip degenerative changes.   *Id.*   He stated that Peltier can stand upright and maintain that position, without moving or walking, for 15 to 30 minutes.   *Id.*   Dr. Chauvin also stated that Peltier can walk continuously without stopping for a maximum of 15 minutes.   *Id.* And he opined that

Peltier can stand and/or walk non-continuously in an eight-hour workday for a total of one hour.  *Id.* at 286.

Dr. Chauvin noted Peltier must elevate his right leg to body level due to right pilon fracture with severe degenerative joint disease.  *Id.*  He opined Peltier requires assistive devices for ambulating and can lift and carry up to five pounds. *Id.*  Dr. Chauvin stated Peltier was not limited in repetitive use of his hands or arms.  *Id.* And he stated that Peltier cannot stoop.  *Id.*  Dr. Chauvin noted that Peltier would likely miss work on an unscheduled, irregular basis in either half days or whole days totaling about three days each month.  *Id.*

Ordinarily, the opinions, diagnoses, and medical evidence of a treating medical source who is familiar with the claimant's medical history and treatments, and responses to treatment, should be accorded considerable weight in determining disability.  *Greenspan*, 38 F.3d at 237; *see also Giles v. Astrue*, 433 Fed.Appx. 241, 246-47 (5th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)) (if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight").  Opinions from examining medical sources must be considered, and they are generally afforded more weight than the opinion of a source who has not examined the claimant. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

However, a treating medical source's opinion does not necessarily govern. When good cause is shown, less weight, little weight, or even no weight may be given

to the treating source's testimony or opinion.  *Kneeland*, 850 F.3d at 760; *see also Loza*, 219 F.3d at 395 (citations omitted) (An ALJ cannot reject a medical opinion without an explanation supported by good cause).  But an ALJ cannot reject a conflicting medical opinion without an explanation.  *Kneeland* at 760-61.  Mere "cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion."  *Id.* at 761.

Moreover, the Fifth Circuit has recognized that an ALJ "is not required to give controlling weight to a treating physician opinion when that opinion is contradicted by examining physician evidence."  *Walker v. Barnhart*, 158 Fed.Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  The Fifth Circuit does not require consideration of each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'"  *Id.*; *see also Qualls v. Astrue*, 339 Fed.Appx. 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it.").  Additionally, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citation omitted).

In evaluating Dr. Chauvin's Medical Source Statement, the ALJ gave less weight to Dr. Chauvin's statement submitted at the hearing.  ECF No. 16-1 at 35.  The ALJ noted that Dr. Chauvin limited Peltier to a reduced range of sedentary work, including limitations of lifting to five pounds, sitting to four hours total, and standing

and walking to just an hour total out of an eight-hour workday. *Id.* at 36. The ALJ determined Dr. Chauvin's limitations to be excessive when seen considering the medical records as a whole. *Id.*

The ALJ observed that Peltier generally did not use an assistive device, and that no treating source concluded that one was necessary. *Id.* Earlier in the ALJ's analysis, he also observed that the record shows that Peltier ambulated with an antalgic gait, but generally did not use an assistive device, and that no assistive device was prescribed to him. *Id.* at 32. He also noted that Peltier mentioned in the 2015 consultative examination that he used a cane, but he did not appear with one in his visits to treatment providers. *Id.*

The ALJ observed that Dr. Olson noted Peltier could lift, carry, and handle light objects, and had negative straight-leg raises. *Id.* at 36. Dr. Olson's September 3, 2016 consultative examination also noted abnormal, reciprocal gait pattern without assistive device and that Peltier was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. *Id.* at 232. The ALJ stated Peltier generally denied significant groin pain. *Id.* at 36. And the ALJ recited Dr. Chauvin's own treatment notes stating that Peltier was "doing well" in the last visit before the date last insured. *Id.* at 36. The ALJ determined that limiting Peltier to only two hours total of standing and walking is reasonable given the objective evidence he reviewed and discussed. *Id.*

The record shows Dr. Chauvin's December 21, 2016 notes reflect Peltier had done well since December 2012, had been weightbearing as tolerated, and could

ambulate for short distances. *Id.* at 244. Dr. Chauvin further noted Chauvin was ambulating and not really interested in any type of procedures. *Id.* Dr. Chauvin's exam revealed stable gait, but noted Peltier walked with antalgic gait. *Id.* at 245. Dr. Chauvin did not have any further recommended treatment plan and opined Peltier could continue to be weightbearing as tolerated. *Id.*

Here, the ALJ did not err in assigning "little weight" to the opinions of Dr. Chauvin in his Medical Source Statement. Additionally, "[an] ALJ is free to choose among the conclusions of two examining physicians, even though one is the claimant's treating physician." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023-1024 (5th Cir. 1990); 20 C.F.R. § 404.1546. The ALJ considered all relevant medical and other evidence to make the RFC determination. 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. And the ALJ's resolution of conflicting evidence in the record is entitled to considerable deference. *Vaughn v. Colvin*, 589 Fed.Appx. 238, 242 (5th Cir. 2014) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)). The ALJ resolves conflicts in evidence, not the Court. It is axiomatic that the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ's RFC assessment is supported by substantial evidence.

C.   **The ALJ properly considered the side effects of Peltier's narcotic medications.**

Peltier contends that the ALJ failed to consider the side effects of his narcotic medications.  ECF No. 26 at 21.  Peltier asserts that he was prescribed Oxycodone HCL 10 milligrams ("mg") four times daily and OxyContin 10 mg Extended Release every twelve hours.  *Id.*  Peltier further asserts that he described the side effects to include "insomnia, tired and severe sleep deprivation" and testified he was sleepy at the hearing.  *Id.* at 22.

Peltier contends that an ALJ commits error when he fails to consider the evidence concerning the nature and quantity of medications that the treating physician prescribed for his impairments.  *Id.* at 22-23 (citing *Loza*, 219 F.3d at 396; *Francois*, 158 F.Supp.2d at 766).  Peltier further argues the Commissioner must consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate pain or other symptoms."  *Id.* at 23 (citing *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (quoting 20 C.F.R. §404.1529(c)(3)(iv)).

Limitations caused by side effects must be taken into consideration when determining whether a claimant is disabled.  The absence of a direct discussion of a claim of drowsiness or other side effect, which could be a significant non-exertional impairment, may deprive the agency decision of substantial evidence to support it and preclude and informed appellate review.  *C.A.B. v. Astrue*, 2009 WL 3156544, at *1 (W.D. La. Sept. 24, 2009); *see also Clay v. Commissioner*, 2009 WL 5195943, at *3 (W.D. La. 2009) ("[W]hen a claimant complains of medication side effects, and the

ALJ fails to evaluate those side effects and their impact on the claimant's residual functional capacity, the ALJ commits error.").

Here, the ALJ found that the medical evidence of record shows Peltier received pain medication management from Dr. Stehr in 2014.  ECF No. 16-1 at 35.  He also noted the record shows Peltier reported improvement in pain symptoms and the ability to perform daily living activities with prescription opioids.  *Id.*  Dr. Stehr's notes reflect that Peltier also denied any issues with the medication.  *Id.* at 260, 264.

The ALJ stated that, in addition to the medical evidence of record, he considered the factors set forth in Social Security regulations and rulings in evaluating the intensity, persistence, and limited effects of the claimant's symptoms. *Id.* at 35 (citing 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); SSR 16-3).  He observed that the relevant factors do not fully support the claimant's alleged loss of functioning.  *Id.*  In considering those factors, the ALJ considered Peltier's testimony that medications resulted in sleep difficulties.  *Id.*  The ALJ noted that the consultative examination report noted that Peltier slept whenever he could.  *Id.*  The ALJ found that, overall, the adverse side effects of medications supported the finding of sedentary work but did not suggest an inability to sustain a full eight-hour workday.  *Id.*

A factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Dominguez v. Astrue*, 286 Fed.Appx. 182, 186 (5th Cir. 2008) (citing *Villa*, 895 F.2d at 1024); *see also Harrell,* 862 F.2d at 480.  As reflected in the decision denying benefits, the ALJ

28

properly considered Peltier's testimony regarding the side effects but found his subjective complaints to be credible only to the extent reflected in the residual functional capacity. *See Crowley,* 197 F.3d at 199.   The ALJ's determination is supported by substantial evidence. *See Nugent v. Massanari*, 275 F.3d 47 (5th Cir. 2001) (citing *Leggett,* 67 F.3d at 564; *Adams v. Bowen,* 833 F.2d 509, 512 (5th Cir.1987)).

## III.   Conclusion

IT IS RECOMMENDED that the final decision of the Commissioner is AFFIRMED, and that Peltier's appeal be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.   Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this  16th day of September, 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE